**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>Rodney Richard Richburg, Sr. and Pamela M Tisdale-Richburg,<br>　　　　　　　　　　　　　　Debtor(s). | C/A No. 25-01297-EG<br><br>Adv. Pro. No. 25-80037-EG<br><br>Chapter 13<br><br>**ORDER IMPOSING NON-MONETARY SANCTIONS** |
| Rodney Richard Richburg<br>Pamela M Tisdale-Richburg,<br>　　　　　　　　　　　　　　Plaintiff(s),<br><br>v.<br><br>Glyndon Square LLC,<br>　　　　　　　　　　　　　　Defendant(s). | |

　　　　The legal profession has entered a brave new world of technological advances. Generative artificial intelligence ("AI") has become increasingly accessible in recent years, making it easier than ever to quickly distill information from a plethora of sources. Many lawyers have embraced this technology, seeing it as a valuable tool to help them serve their clients in more efficient and cost-effective ways. As with other new development in the practice of law, there are growing pains. Attorneys must reconcile the integration of new technology in their work with their existing ethical duties and professional responsibilities. Without proper knowledge of how AI works, lawyers may unjustifiably rely on the content it generates in ways that violate rules of professional responsibility.

　　　　The matter before the Court presents that very issue—an attorney filing a pleading that cites fake caselaw "hallucinated" by AI.[1] The Court entered an Order and Rule to Show Cause

---

[1] As the Court understands the term, "hallucinations" are false answers or nonexistent content created by generative AI systems in response to user prompts. *See* Zach Warren, *GenAI Hallucinations Are Still Pervasive in Legal Filings, but Better Lawyering Is the Cure*, THOMSON REUTERS (Aug. 18, 2025), https://www.thomsonreuters.com/en-us/posts/technology/genai-hallucinations/ ("These hallucinations are false 'facts' generated by GenAI systems and can occur due a number of issues, including incomplete or inaccurate data sets, confusing or misworded prompts, or

1

(the "Show Cause Order")[2] after discovering that the cases cited in a motion filed in the above-captioned adversary proceeding (the "Adversary Proceeding") did not exist. Debtors' attorney ("Counsel"), a solo practitioner with approximately 40 years of experience, admitted that the fake citations were generated by AI, and out of haste and a naïve understanding of the technology, he did not independently verify the sources were real before including the citations in the motion filed with the Court seeking a preliminary injunction. Having heard the explanation and arguments Counsel provided and having considered the facts of this case, while considering the procedural context in which the issue arises and the limitations imposed by Federal Rule of Bankruptcy Procedure 9001(c)(4)(B)(ii), the Court imposes non-monetary sanctions. Not to diminish the gravity of Counsel's actions in this case, the Court intends for this Order to also serve as a "lesson learned" for the bar in general of the potential consequences of uninformed reliance on generative AI in legal practice.

## FINDINGS OF FACT

Counsel represents Rodney Richard Richburg and Pamela M. Tisdale-Richburg ("Debtors" or "Plaintiffs") in both their main Chapter 13 bankruptcy case and the Adversary Proceeding. On July 19, 2025, with the assistance of Counsel, Debtors filed an adversary complaint as well as a Motion for Preliminary Injunction (the "Motion") against Glyndon Square LLC ("Defendant") for the alleged violation of the automatic stay relating to Defendant's pursuit of an eviction action[3] for leased commercial property which Debtors used to operate their limited liability company, UBI

---

answers that are irrelevant to a given question."); *Dehghani v. Castro*, No. 2:25-cv-0052 MIS-DLM, 2025 WL 988009, at *4 n.7 (D.N.M. Apr. 2, 2025) ("A hallucination occurs when an AI database generates fake sources of information.").

[2] ECF No. 11, entered July 30, 2025.

[3] Debtors listed a lease with Defendant for "rental of a call center location" in Schedule G in their main bankruptcy case, C/A No. 25-01297-EG (filed April 6, 2025). They also listed their 100% ownership interest in their business, UBI Southeast Properties LLC, in Schedule A/B. From the record before the Court, it is not clear whether the lease at issue is between Defendant and UBI Southeast Properties LLC and/or Debtors.

2

Southeastern Properties LLC ("UBI LLC"). In the Motion, Debtors argued that UBI LLC is property of their bankruptcy estate pursuant to 11 U.S.C. § 541 and any eviction concerning property leased for their business operations should be enjoined while Debtors are in bankruptcy. In support of Debtors' assertion that they would likely succeed on the merits of the Adversary Proceeding, the Motion cited *In re Parkdale, LLC* and *In re Ahn*—both citations for cases that do not exist. The hallucinated citations were used to support Debtors' position that it is settled law in this district that an LLC—and by implication its assets—are property of the bankruptcy estate in a case filed by the LLC's members in their personal capacity, meaning that such assets are protected by the automatic stay under 11 U.S.C. § 362.[4] Debtors also cited S.C. Code Ann. § 33-44-301(1) for the proposition that "a membership interest [in an LLC] is personal property," but that section of the South Carolina Code deals with agency of members and managers of an LLC and does not appear to be relevant in the context for which it is cited.

The Court discovered the improper case citations upon reviewing the Motion and, in the Order and Notice of Emergency Hearing (the "Order Setting Hearing")[5] scheduling a hearing on the relief sought for July 29, 2025, the Court noted that Counsel should be prepared to explain where he obtained the case citations and why the cited statute was referred to in support of a proposition for which the statute does not stand. On July 22, 2025, Counsel submitted

---

[4] The Court notes that while Debtors' membership interests in the LLC are clearly property of Debtors' bankruptcy estate under 11 U.S.C. § 541(a) and are therefore covered by the automatic stay, the same cannot be said for the assets of the LLC. *See* S.C. Code Ann. § 33-44-501(a) ("A member is not a co-owner of, and has no transferable interest in, property of a limited liability company."); *In re Brittain*, 435 BR 318, 322 (Bankr. D.S.C. 2010) (noting that a member's bankruptcy estate has no interest in property of an LLC, the estate's property interest is limited to the member's distributional interest, and a member's possessory interest alone is insufficient to constitute property of the estate); *In re Ollis*, No. 18-04549-HB, 2019 WL 244452, at *2 (Bankr. D.S.C. Jan. 16, 2019) (finding the automatic stay to be inapplicable to property of the debtor's LLC where the debtor failed to cite any applicable authority that would justify the property's inclusion in the debtor's bankruptcy estate). Though the Court questions the merits of Debtors' argument to the contrary, particularly given that the real cases cited in the Amended Motion (defined *infra*) still do not appear to support Debtors' position, the focus of this order is on the improper citation of cases fabricated by AI.

[5] ECF No. 4, entered July 2, 2025.

3

correspondence to chambers apologizing for the erroneous citations.[6] Based on the explanation provided, it is the Court's understanding that Counsel used Microsoft CoPilot, a generative AI platform, to draft at least some of the pleadings and to find case citations to ultimately include in the Motion without verifying the sources cited.[7] Debtors also filed an Amended Motion for Temporary Injunction ("Amended Motion") the day after the Court entered the Order Setting Hearing, replacing the erroneous citations with new citations in support of Debtors' argument that LLCs owned by an individual debtor are property of the debtor's bankruptcy estate. On July 28, 2025—the day prior to the scheduled hearing on the Motion seeking a preliminary injunction—Debtors filed a Notice of Voluntary Dismissal, dismissing the Adversary Proceeding pursuant to Fed. R. Civ. P. 41(a)(i) and rendering the Motion moot.[8] The Court then issued the Show Cause Order to address whether any sanctions may be appropriate under Fed. R. Bankr. P. 9011 in light of Counsel's use of citations that were clearly "hallucinated" by AI or whether disgorgement of fees was warranted pursuant to 11 U.S.C. § 329.

Counsel appeared at the show cause hearing and explained that prior to this case, he had never used AI for legal research and his experience with AI was limited to occasional use for hobbies. According to Counsel, he was drafting the Motion on a Saturday and was in a hurry to finish, so in his haste and desire to avoid a "tedious and drawn out" research process, he prompted

---

[6] ECF No. 5.

[7] As stated in the correspondence filed with the Court:
> The AI did a good job of drafting a complaint. I did check and revise it. It is based on facts and law included in the motion which was not drafted by AI. Unfortunately, I have learned the hard way that AI "scrapes" everything. It is accurate on the complaint because the motion was in close proximity, literally in time and context. . . .
> I would have double-checked, but I really believed in the AI so much that I have paid a subscription and the AI confirmed well-settled case law that I know to be true. . . .

[8] ECF No. 9. The deadline for defendant to respond to the Motion was set for July 28, 2025 at 10:00 a.m. No response was filed by that time and the dismissal was then filed later that day. The Court was also informed that a settlement had been reached with Defendant.

4

CoPilot to find South Carolina caselaw supporting what he acknowledged was a "weak position." He admitted that he did not verify the authenticity of the cases cited prior to filing the document on CM/ECF, as he claimed CoPilot also provided short blurbs summarizing the cases, giving them the appearance of legitimacy. Counsel stated that he did not know the citations were made up until he read the Court's Order Setting Hearing. He was "shocked" to learn that AI can generate fake sources in its results, as he expected it to operate akin to a traditional Google search—providing existing material scraped from across the internet. Counsel stated that he does not intend to use AI for legal research going forward and will subscribe to Westlaw or Lexis. He also confirmed that he did not charge Debtors any fee for the Adversary Proceeding, nor will he seek compensation for services performed in connection therewith. Counsel indicated that he has received $1,100 in compensation for Debtors' main bankruptcy case.[9]

## CONCLUSIONS OF LAW

The Court issued the Show Cause Order *sua sponte* to address whether sanctions should be imposed on Counsel pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure. Neither Defendant nor any other party filed a response to the Show Cause Order or sought any other relief. Rule 9011 provides, in pertinent part:

> By presenting to the court a petition, pleading, written motion, or other document—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that, to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . . .

Fed. R. Bankr. P. 9011(b); *see also Benjamin v. Costco Wholesale Corp.,* 779 F.Supp.3d 341, 347 (E.D.N.Y. 2025) (noting that Fed. R. Civ. P. 11 imposes a duty on attorneys to certify that they

---

[9] According to Form B2030—Disclosure of Compensation of Attorney for Debtor—Counsel agreed to accept $3,100 in the main case, but so far has been paid $1,100, with the remainder to be paid through the Chapter 13 plan.

5

have conducted a reasonable inquiry and have determined that any papers they file with the court are well grounded in fact and legally tenable). Bankruptcy Rule 9011 mirrors Rule 11 of the Federal Rules of Civil Procedure, and the Fourth Circuit has instructed that courts may look to caselaw interpreting Rule 11 when determining whether there has been a violation of Rule 9011. *In re Weiss*, 111 F.3d 1159, 1170 (4th Cir. 1997); *see also In re Defeo,* 632 B.R. 44 (Bankr. D.S.C. 2021).

Under Rule 11, an attorney's conduct is evaluated based on a standard of objective reasonableness, meaning that a violation only occurs if "a reasonable attorney in like circumstances could not have believed [the] actions to be legally justified." *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002) (quoting *In re Sargent*, 136 F.3d 349, 352 (4th Cir. 1998)); *see also Dehghani v. Castro*, No. 2:25-cv-0052 MIS-DLM, 2025 WL 988009, at *3 (D.N.M. Apr. 2, 2025) (quoting *Adamson v. Bowen*, 855 F.2d 668, 673 (10th Cir. 1988)) (explaining that under the objective reasonableness standard, "[i]f after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law, then such conduct is sanctionable under Rule 11"). "If, after notice and a reasonable opportunity to respond, the court determines that [such provision] has been violated, the court may . . . impose an appropriate sanction on any attorney, law firm, or party that committed the violation or is responsible for it." Fed. R. Bankr. P. 9011(c)(1). Such sanctions, which may include "a nonmonetary directive," must be limited to only "what suffices to deter repetition of the conduct or deter comparable conduct by others similarly situated." Fed. R. Bankr. P. 9011(c)(4)(A). The Court may seek to impose sanctions *sua sponte* by entering an order that provides the offending party with notice as to the specific conduct at issue and an opportunity to show cause as to why the party has not violated Rule 9011(b). Fed. R. Bankr. P. 9011(c)(3). Rule

6

9001(c)(4)(B), however, sets forth some limitations on the imposition of monetary sanctions: "The court must not impose a monetary sanction, including when the Court *sua sponte* raises issues concerning a violation of Rule 9011: . . . "on its own, unless it issued the show-cause order under (c)(3) before voluntary dismissal or settlement of the claims made by or against the party that is, or whose attorneys are, to be sanctioned."

"Across the country, courts have issued a panoply of sanctions against attorneys who submitted fake cases." *Benjamin,* 779 F.Supp.3d, at 347 (citing cases); *see also In re Martin,* 670 B.R. 636 (Bankr. N.D. Ill. 2025) (citing several district court opinions imposing sanctions for similar misconduct). Though there are many district court opinions addressing the issue, to date *In re Martin* appears to be the only published opinion in which a bankruptcy court has imposed sanctions under Rule 9011 for an attorney's submission of AI-generated citations to nonexistent authorities. In that case, the court sought to impose sanctions *sua sponte* after discovering fake quotations and citations to nonexistent authorities in a brief prepared and filed by the debtor's attorneys. After the court issued a show cause order, the attorneys withdrew the offending brief as well as their application for compensation in the case, filed a response to the order, and addressed the court's concerns at a hearing. The attorneys admitted that citations were unverified AI hallucinations, apologized for the misconduct, and represented that their firm was taking corrective steps to implement a formal AI policy, require the firm's attorneys to complete continuing legal education in the ethical use of AI in legal practice, and offer reimbursement to opposing counsel for time spent reviewing the offending brief. Though appreciative of the attorneys' candor and efforts to remedy the situation, the court found that the attorneys violated Bankruptcy Rule 9011 and indicated that sanctions were a "steep" but necessary consequence because "citation to fake AI-generated sources . . . shatters [] credibility" and "imposes many

7

harms." *In re Martin*, 670 B.R. at 646 (quoting *Kohls v. Ellison*, No. 24-cv-3754, 2025 WL 66514, at *4-5 (D. Minn. Jan. 10, 2025)). Notably, that case had been plagued with issues from the beginning, including counsel's filing of a chapter 13 plan without Debtor's review or consent. *Id.* at 640. While limiting the issue addressed in the opinion to the fake citations, the court noted that "the allegations are consistent with my general observation that [the attorneys] should be taking more care when filing and prosecuting Chapter 13 cases than has been shown here." *Id.* at 641. Accordingly, the court ordered the attorneys to pay a penalty of $5,500 and attend training on the use of AI in legal practice. *Id.* at 649 (stating that "[t]he second reason I issue sanctions is that, as described above, I also have concerns about the way this particular case was handled.").

Although the facts of this case are not identical to the facts in *Martin* and Counsel's conduct in this case has not been as egregious as what was before the Bankruptcy Court in the Northern District of Illinois, this Court agrees with the *Martin* court that "[t]he bottom line is this: at this point, no lawyer should be using ChatGPT or any other generative AI product to perform research without verifying the results." *Id.* at *21. Under Rule 9011, an attorney may be sanctioned for, among other things, misrepresenting facts or making frivolous legal arguments. At the very least, the duties imposed by Rule 9011—as well as Fed. R. Civ. P. 11—require that attorneys read and confirm not only that cases cited stand for the proposition asserted, but also that they exist. There does not appear to be any other way to meet the requirement that an attorney ensures that "legal contentions are warranted by existing law or by nonfrivolous argument". *See* Fed. R. Bankr. P. 9011(b)(2).

Blind reliance on work product or research generated by AI also raises issues with the rules of professional responsibility. Rule 1.1 of the South Carolina Rules of Professional Conduct addresses how the competence required of lawyers in representing their clients extends to the

8

lawyers' use of technology. *See* Rule 1.1, RPC, Rule 407 SCACR ("A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."). Comment 8 to Rule 1.1 provides, in relevant part, that "[t]o maintain the requisite knowledge and skill, a lawyer should keep abreast of changes in the law and its practice, *including a reasonable understanding of the benefits and risks associated with technology the lawyer uses to provide services to clients . . . ." Id*. cmt. 8 (emphasis added). Though the South Carolina Bar has not issued any ethics opinions concerning the use of AI in legal practice, opinions and practical guidance from other state bars provide guidelines for AI use that are similar to what Comment 8 to South Carolina's Rule 1.1 advises with respect to an attorney's use of technology in general.[10]

Thus, it appears that while using AI is not in and of itself problematic, a lawyer's ethical duties require proper knowledge of the technology and careful review of any legal analyses and citations generated by AI. When used correctly and cautiously, generative AI can prove to be an efficient tool; however, attorneys should be aware of the inherent risk of hallucinations and remain diligent in verifying the accuracy of AI-generated material. Attorneys should also use caution in drafting pleadings with AI; hastily filing AI-generated documents without ensuring that the

---

[10] *See*, *e.g.*, Alaska Bar Assn. Ethics Comm., Ethics Op. 2025-1 (2025) (stating that it is ethically permissible for attorneys to use generative AI to assist clients "but before doing so, the lawyer should understand, to a reasonable degree, how the technology works, its limitations, and its ability (or not) to safeguard client confidences and secrets"); Pa. Bar Assn. Comm. on Legal Ethics & Pro. Resp., Informal Op. 2024-200 (2024) ("[G]enerative AI tools, like any tool in a lawyer's arsenal, must be used with knowledge of their potential and awareness of the risks and benefits the technology offers . . . . [and] are to be used cautiously and in conjunction with a lawyer's careful review of the 'work product' that those types of tools create" and further advising that "[b]ecause generative AI creates content . . . lawyers have an obligation to verify that the citations are correct and that they accurately summarize the cases or other information cited."); Cal. St. Bar Standing Comm. on Pro. Resp. & Conduct, *Practical Guidance for the Use of Generative Artificial Intelligence in the Practice of Law* (2023) ("It is possible that generative AI outputs could include information that is false, inaccurate, or biased. A lawyer must ensure competent use of the technology, including the associated benefits and risks, and apply diligence and prudence with respect to facts and law."). The Pennsylvania Bar Association's Committee on Legal Ethics and Professional Responsibility explains that results from generative AI in particular need careful review for accuracy and relevance because "unlike its predecessors . . . it creates content, and it is the creation of content that necessitates heightened awareness by lawyers." ).

9

caselaw or arguments asserted therein are correct can be a Rule 9011 and ethical pitfall.[11] Letting AI draft answers to legal questions without subsequent review by an attorney may also be akin to allowing non-attorney staff to practice law without supervision—a clear violation of the rules of professional responsibility.[12]  It is, after all, the attorney's duty to ensure filings comply with all applicable legal and ethical obligations, and that duty cannot be delegated.

Counsel has acknowledged the mistakes and based on the correspondence filed and statements at the hearing, clearly expressed his remorse for his blind reliance on a technological tool which he did not seem to fully understand.  Though the Court preluded the concerns with the fake cases originally cited in the Motion in the Order Setting Hearing, the Court did not issue the Show Cause Order until after the motion was amended and a voluntary dismissal of the Adversary Proceeding was filed.  Thus, a strict reading of Rule 9011(c)(4)(B)(ii) would preclude the Court from seeking to impose monetary sanctions on Counsel *sua sponte*.  Here, there is no indication that the voluntary dismissal was filed for the purpose of avoiding monetary sanctions.  The arguments in Debtors' complaint were weak from the outset, and Debtors appeared to have resolved the eviction issue with Defendant prior to the Notice of Voluntary Dismissal being filed.  Regardless, the Court notes, for future reference, that voluntary dismissal is not the cure-all solution to avoid monetary sanctions for violations of Fed. R. Bankr. P. 9011.  Among other

---

[11] Particularly in situations like Counsel described experiencing here, prompting generative AI to find caselaw or draft arguments taking a particular position that is not supported by existing law can backfire, as hallucinations may be more likely to occur when there are little to no existing authorities available that clearly satisfy the user's request. *See* Conor Murray, *Why AI "Hallucinations" Are Worse Than Ever*, FORBES (May 6, 2025, 1:12 PM), https://www.forbes.com/sites/conormurray/2025/05/06/why-ai-hallucinations-are-worse-than-ever/ (noting that "[q]uestions asked outside of the data the AI model knows can lead to the bot responding with incorrect information," and reasoning models like ChatGPT and OpenAI are "designed to maximize the chance of giving an answer, meaning the bot will be more likely to give an incorrect response than admit it doesn't know something").

[12] *See* Rule 5.3, 5.5 & cmt. 2, RPC, Rule 407 SCACR ("This Rule does not prohibit a lawyer from employing the services of paraprofessionals and delegating functions to them, so long as the lawyer supervises the delegated work and retains responsibility for their work."); Fla. St. Bar Assn. Comm. on Pro. Ethics, Op. 21-1 (2024) (noting that while Florida's equivalent to Rule 5.3, RPC, Rule 407 SCACR defines a nonlawyer assistant as a "person," "many of the standards applicable to nonlawyer assistants provide useful guidance for a lawyer's use of generative AI").

10

reasons, if a party has responded to the offensive pleading, court approval for the dismissal is necessary and may allow the Court to impose monetary sanctions. The Court also has the authority under 11 U.S.C. § 329 to order disgorgement of an attorney's compensation to the extent the compensation is unreasonable in light of the attorney's transgressions.

The Court finds that Counsel violated Rule 9011 and non-monetary sanctions are appropriate to deter future misconduct. The Court further notes that while, under difference circumstances, it may have issued monetary sanctions, the sanctions should also be limited to what is sufficient to deter repetition of the conduct or deter comparable conduct by others similarly situated. This should serve as a guide of what not to do when using AI in pleadings filed with this Court.

As indicated in the Show Cause Order, the Court may also review whether Counsel's compensation in representing Debtors exceeds the reasonable value of his services, in which case the Court may order such compensation be returned to Debtors pursuant to 11 U.S.C. § 329. Given Counsel's statements at the hearing averring that he has not and will not seek compensation from Debtors for services he provided in connection with the Adversary Proceeding, the Court has no need to review Counsel's fees under § 329.

## CONCLUSION

For the reasons stated herein, the Court finds that Counsel has violated Federal Rule of Bankruptcy Procedure 9011 and a nonmonetary directive for Counsel to complete three (3) hours of continuing legal education in addition to any annual requirements that may be imposed on Counsel by the South Carolina Bar is an appropriate sanction.

**IT IS, THEREFORE, ORDERED** that Counsel is hereby directed to complete at total of three (3) hours of continuing legal education on ethics in addition to the requirements that he may

be subject to by the South Carolina Bar, including <u>at least two (2)</u> hours related to the ethical use of artificial intelligence in legal practice.[13] Counsel shall file with the Court a certification of compliance with this Order, listing the courses and number of CLE credit hours completed for each, by no later than February 1, 2026.

    **AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**08/27/2025**



Elisabetta G. M. Gasparini
US Bankruptcy Judge
District of South Carolina

Entered: 08/27/2025

---

[13] To be clear, the three (3) hours are <u>in addition to</u> any CLE requirements imposed by the South Carolina Bar. If Counsel is exempt from CLE requirements under Rule 408(a)(2)(B), SCACR, he must nevertheless complete the continuing legal education ordered herein.